UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LYNN MARIE LANSOM,　　　　　　　　　　16-CV-536-MJR
　　　　　　　　　　　　　　　　　　　　　DECISION AND ORDER
　　　　　　Plaintiff,

　-v-

COMMISSIONER OF SOCIAL SECURITY,[1]

　　　　　　Defendant.
_____

　　　　Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 23).

　　　　Plaintiff Lynn Marie Lansom brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her Social Security Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Lansom's motion (Dkt. No. 12) is denied and the Commissioner's motion (Dkt. No. 21) is granted.

## BACKGROUND

　　　　On February 8, 2013, Lansom filed an application for DIB alleging disability since February 8, 2013 due to a back injury, high blood pressure, a knee injury, and tendonitis. (*See* Tr. 59, 115-16, 133).[2] Born in 1956, Lansom was fifty-six-years old at the time of her application. (Tr. 115). Despite her alleged impairments, she worked part-time as a restaurant manager after filing her application. (Tr. 36-40). Before filing her application,

---

[1] 　　　The Clerk of Court is directed to amend the caption accordingly.
[2] 　　　References to "Tr." are to the administrative record in this case.

she worked as a waitress at a restaurant and a cashier at the DMV. (Tr. 40-42). Lansom's DIB application was denied on April 16, 2013 (Tr. 59, 68-71), after which she requested a hearing before an Administrative Law Judge (Tr. 72-73). On August 20, 2014, Lansom, represented by counsel, appeared before Administrative Law Judge Timothy M. McGuan (the "ALJ") for a hearing. (Tr. 33-58). On January 22, 2015, the ALJ issued his decision denying Lansom's DIB claim. (Tr. 15-32). Lansom requested review by the Appeals Council (Tr. 12), but on May 5, 2016, the Appeals Council denied Lansom's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-4). This action followed.

## **DISCUSSION**

I.     *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §404.1520(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §404.1545(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §404.1520(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.*  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §404.1520(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.*  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.*

The burden through steps one through four described above rests on the claimant.  If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ first found that Lansom was insured for DIB through December 31, 2016. (Tr. 20). The ALJ then followed the required five-step analysis for evaluating Lansom's DIB claim. Under step one, the ALJ found that Lansom has in fact engaged in substantial gainful activity since her February 8, 2013 onset date by working part-time at a restaurant. (*Id.*).[3] The ALJ nonetheless continued on with his analysis and found at step two that Lansom has severe impairments relating to her back and left knee problems. (*Id.*). At step three, the ALJ found that Lansom does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 22). Before proceeding to step four, the ALJ assessed Lansom's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in [20 C.F.R. §404.1567(b)][4] which would require postural activities occasionally and never climbing ladders, ropes or scaffolds. In addition, the claimant must have the option to sit/stand after 30 minutes in either position.

(Tr. 26). Proceeding to step four, the ALJ found that Lansom is capable of performing her past relevant work as a restaurant manager and cashier. (Tr. 28). In the alternative, the ALJ proceeded to step five and concluded that Lansom can perform jobs that exist in significant numbers in the national economy, such as payroll clerk. (*Id.*). Accordingly,

---

[3] Although the Commissioner's regulations provide that a claimant who is engaging in substantial gainful activity is not disabled regardless of his or her medical condition, the Commissioner has not raised Lansom's work at the restaurant as a basis for affirming the Commissioner's disability determination.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §404.1567(b).

the ALJ found that Lansom has not been under a disability within the meaning of the Act from her February 8, 2013 onset date through the date of his decision. (*Id.*).

IV.     *Lansom's Challenge*

Lansom argues that the ALJ erred in not fully crediting her testimony that the side effects of her pain medication — namely, fatigue and forgetfulness — affect her ability to work. (*See* Dkt. No. 12-1 (Lansom's Memo. of Law)).

It is well settled that it is the role of the ALJ, not the Court, to appraise the credibility of witnesses, including the claimant. *See Carroll*, 705 F.2d at 642. "The ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged." *Fisk v. Colvin*, No. 14-CV-931S, 2017 WL 1159730, at *5 (W.D.N.Y. Mar. 29, 2017). The Commissioner has set forth a two-step process to evaluate a claimant's testimony regarding her symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or other symptoms alleged by the claimant. Second, if the ALJ finds that the claimant is so impaired, he must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about her pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility by assessing the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain or other symptoms; (5) any treatment, other than medication, that the claimant has received; (6)

any other measures that the claimant employs to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain or other symptoms. *See* 20 C.F.R. §404.1529; Social Security Ruling ("SSR") 96-7P, 1996 WL 374186 (July 2, 1996); SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017).

Here, at the first step of the credibility analysis, the ALJ found that Lansom's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but at the second step, the ALJ found Lansom's statements concerning the intensity, persistence, and limiting effects of her symptoms — including Lansom's statements regarding fatigue and forgetfulness resulting from her pain medication — to be "not entirely credible." (Tr. 27). Contrary to Lansom's argument, the ALJ's decision to discount her credibility complied with the applicable regulation and is supported by substantial evidence.

First, the ALJ appropriately addressed Lansom's daily activities, which include cooking, cleaning, shopping, bathing and dressing herself, going out and socializing with friends, and working eighteen hours a week at a restaurant. (Tr. 25-27); 20 C.F.R. §404.1529(c)(3)(i). Lansom's ability to perform all of these activities — including, in particular, her ability to work part-time at a restaurant — cut against her testimony that the side effects of her medication preclude her from working.

The ALJ also considered the location, duration, frequency, and intensity of Lansom's pain and any precipitating and aggravating factors with regard to her pain. 20 C.F.R. §404.1529(c)(3)(ii), (iii). The ALJ noted that Lansom has experienced back pain since 2006, when she injured her lower back in a motorcycle accident. (Tr. 23). Lansom's

back pain is aggravated by any type of activity, including bending, but she is able to reduce the pain to a mild level by sitting down, taking pain medication, and working fewer hours at the restaurant. (Tr. 24-27). Lansom is allowed to sit down while working at the restaurant. (Tr. 48). The ALJ also noted how Lansom suffers from knee pain that is aggravated by any kind of activity, such as weight bearing activities, but that she is able to reduce her knee pain to a mild level through rest and medication. (Tr. 23-25).

The ALJ also appropriately addressed Lansom's medication and her testimony regarding the side effects of her medication, including fatigue and forgetfulness. 20 C.F.R. §404.1529(c)(3)(iv); (Tr. 23-27). The ALJ reasonably found that the objective evidence in the record — not just the medical evidence, but also Lansom's appearance, her daily activities, and her continued ability to perform part-time work — do not support Lansom's testimony regarding the side effects of her medication. (Tr. 27); *see May v. Colvin*, No. 13-CV-06011(MAT), 2014 WL 3546297, at *9 (W.D.N.Y. July 10, 2014) (finding that the ALJ reasonably discounted plaintiff's testimony regarding the intensity, persistence, and limiting effects of his pain medication because plaintiff's testimony was inconsistent with other evidence in the record).

The ALJ also addressed the treatment Lansom received for her knee and back pain as well as other measures she employs to relieve her pain. 20 C.F.R. §404.1529(c)(v), (vi). The ALJ detailed, for example, Lansom's treatment with Dr. Mike Sun, an orthopedic surgeon who performed surgery on Lansom's back after the motorcycle accident and who continued to treat her thereafter, Dr. Keith Stub, a knee specialist who examined and treated Lansom after she re-injured her knee in 2012, and Dr. Edward Stehlik, Lansom's general physician who has treated her since 2002. (Tr. 22-

26). The ALJ also noted how Lansom treats her pain with ice and rest. (Tr. 23-27). The ALJ concluded that Lansom responded to the foregoing treatment without any adverse side effects (Tr. 27), and Lansom has not pointed to any medical evidence contradicting this finding.

Contrary to Lansom's argument, the ALJ did not discount her credibility based solely on the medical evidence in the record. Rather, the ALJ carefully considered all of the evidence in the record, including the non-medical evidence, to find Lansom's testimony inconsistent with the record and thus not entirely credible. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("[The ALJ] is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."). The ALJ's credibility finding is, as discussed above, supported by substantial evidence. Accordingly, Lansom's objection to the Commissioner's disability decision is without merit.

## **CONCLUSION**

For the foregoing reasons, Lansom's motion for judgment on the pleadings (Dkt. No. 12) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 21) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: July 2, 2018
          Buffalo, New York

                                  */s/ Michael J. Roemer*
                                  MICHAEL J. ROEMER
                                  United States Magistrate Judge